**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | |
| **GALLERIA WEST LOOP INVESTMENTS,** ) | **Case No. 24-32143** |
| **LLC,** ) | |
| ) | **Chapter 11** |
| Debtor. ) | |

**VERITEX COMMUNITY BANK'S EMERGENCY MOTION FOR ENTRY OF**
**<u>INTERIM</u> AND <u>FINAL</u> ORDERS GRANTING RELIEF FROM THE AUTOMATIC**
**STAY AS TO THE DEBTOR'S REAL PROPERTY LOCATED AT**
**50 BRIAR HOLLOW LANE, HOUSTON, TEXAS 77027**

---

> **Emergency interim relief has been requested by no later than <u>11:00 a.m. on May 14, 2024</u>.**
>
> **If you object to the interim relief requested or believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat this pleading as unopposed and grant the relief requested.**
>
> **This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.**
>
> **Represented parties should act through their attorney.**
>
> **There will be a hearing on this matter on <u>May 31, 2024 at 9:00 a.m.</u> in Courtroom 404, 515 Rusk, Houston, TX 77002, unless otherwise ordered by the Court.**

Veritex Community Bank ("<u>Veritex</u>") files this *Emergency Motion for Relief from the Automatic Stay* (the "<u>Motion</u>") with respect to the Debtor's real property located at 50 Briar Hollow Lane, Houston, Texas 77027 (the "<u>Property</u>"), pursuant to section 362(d) of title 11 of the United

10765351 v1 (70859.00050.000)

States Code (the "Bankruptcy Code") and rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and respectfully states as follows:

## RELIEF REQUESTED

1.      Veritex seeks relief from the automatic stay to foreclose the Property on the next available sale date, which is Tuesday, June 4, 2024.  Texas law requires that property be posted for foreclosure at least 21 days in advance of the foreclosure sale, which is Tuesday, May 14, 2024. TEX. PROP. CODE § 51.002(b).

2.      Accordingly, Veritex requests entry of an interim order, substantially in the form attached hereto (the "Interim Order"), no later than **Tuesday, May 14, 2024 at 11:00 a.m.**, (i) granting Veritex relief from the automatic stay for the limited and sole purpose of posting the Property for foreclosure and (ii) setting this Motion for final hearing on or before **Monday, June 3, 2024**.

3.      Upon the final hearing, Veritex requests entry of a final order, substantially in the form attached hereto (the "Final Order"), on or before **Monday, June 3, 2024**, (i) terminating the automatic stay as to the Property, (ii) authorizing Veritex to exercise all other rights and remedies under Veritex's Loan Documents and applicable law, including foreclosing the Property on June 4, 2024, and (iii) prohibiting the Debtor from transferring the Property or otherwise interfering in any way with the foreclosure or Veritex's exercise of additional rights and remedies.

4.      Veritex submits that, under the circumstances of this case, the emergency relief sought in this Motion is warranted and necessary to prevent GWLI from unduly hindering and delaying the exercise of Veritex's rights and remedies.

10765351 v1 (70859.00050.000)

## PRELIMINARY STATEMENT

5.     Veritex comes before this Court after the Debtor, Galleria West Loop Investments, LLC ("GWLI"), has pursued four different state court injunctions and filed (or caused to be filed)[1] two bankruptcy cases to stop Veritex from foreclosing on the Property, all since January 2023.

6.     GWLI owns the subject Property, which is "single asset real estate" within the meaning of Bankruptcy Code section 101(51B).[2]  The Property is located near the Galleria in Houston, Texas.  It consists of two office buildings—the East and West Buildings—joined by a shared underground parking garage.  Veritex holds a first-lien Deed of Trust on the Property securing loan obligations of more than $20 million.

7.     Veritex was set to foreclose the Property on Tuesday, May 7, 2024.  Late in the evening on May 6, 2024 (the "Petition Date"), Gene McCubbin d/b/a PopLabs ("McCubbin") filed an involuntary petition against GWLI under Chapter 11 of the Bankruptcy Code [Dkt. #1] (the "Involuntary Petition" or "Petition").  McCubbin is allegedly owed $32,665.75 by GWLI.

8.     Remarkably, the attorney who filed the Involuntary Petition for McCubbin, Kevin M. Madden ("Madden") with The Law Offices of Kevin M. Madden, PLLC, has for months **represented GWLI** in attempting to block Veritex's foreclosure.  On the morning of the Petition Date, Madden appeared in the 295th District Court of Harris County, Texas (the "State Court") on behalf of GWLI to present a last-minute argument for "equitable relief" stopping Veritex's foreclosure.[3]  Madden, for GWLI, sought emergency reconsideration of the State Court's order

---

[1] By "caused to be filed," Veritex is referring to the fact that GWLI's State Court counsel filed this involuntary bankruptcy petition on behalf of the petitioning creditor.

[2] The Involuntary Petition [Dkt. #1] states that GWLI's business is single asset real estate.

[3] *BDFI, LLC and Galleria West Loop Investments, LLC v. Veritex Community Bank*, Cause No. 2024-20417 (Tex. Dist. – Harris Co. [295th Dist.] Apr. 1, 2024) (the "TRO Action").

10765351 v1 (70859.00050.000)

entered three days earlier, on May 3, 2024, denying GWLI's *second* request for a temporary restraining order (a "TRO") against Veritex to stop the foreclosure scheduled for May 7, 2024.

9.      Madden filed GWLI's first TRO request against Veritex (the first of 2024, that is) on April 1, 2024, to stop Veritex's foreclosure set for April 2, 2024.[4]  The State Court granted the TRO and set an injunction hearing for April 15, 2024.[5]  Veritex reposted the Property for foreclosure on May 7, 2024, pending the hearing.  Thereafter, with knowledge of the May 7th foreclosure date, the State Court continued the injunction hearing to May 13, 2024.  On Friday, May 3, 2024, Madden filed GWLI's second request for a TRO to stop the foreclosure.[6]  The State Court denied GWLI's request that same day.[7]  On May 6, 2024, Madden filed GWLI's emergency request for reconsideration and "equitable relief," which the State Court again denied.[8]

10.     Literally hours after representing GWLI in the State Court TRO Action, Madden filed the instant involuntary bankruptcy proceeding on behalf *of McCubbin*, the sole petitioning creditor in this case.  Three days later, on May 9, 2024, Madden filed a Suggestion of Bankruptcy in the TRO Action *on behalf of GWLI*.[9]  Madden represented GWLI in State Court before, during, and after filing the Involuntary Petition as counsel for McCubbin.

11.     Moreover, this is the second time in 16 months that bankruptcy has been used to stop Veritex from foreclosing on this Property.  The last time was on January 3, 2023, when GWLI filed a voluntary Chapter 11 petition immediately before Veritex's scheduled foreclosure sale.  *In*

---

[4] TRO Action, *Plaintiffs' Original Petition, Application for Temporary Restraining Order, Temporary and Permanent Injunction* (Apr. 1, 2024)

[5] TRO Action, *Temporary Restraining Order* (Apr. 2, 2024).

[6] TRO Action, *Plaintiffs' Amended Application for Temporary Restraining Order* (May 3, 2024).

[7] TRO Action, *Order Denying Plaintiff's Second Application for a Temporary Restraining Order* (May 3, 2024).

[8] TRO Action, *Plaintiff's Emergency Request for Equitable Relief* (May 6, 2024) and *Order* (May 6, 2024).  These documents are attached hereto as **Exhibit G**.

[9] TRO Action, *Suggestion of Bankruptcy* (May 9, 2024).  This document is attached hereto as **Exhibit H**.

10765351 v1 (70859.00050.000)

*re: Galleria West Loop Investments, LLC*, No. 23-50027-cag11 (Bankr. W.D. Tex. Jan. 3, 2023) (hereinafter, the "<u>First Bankruptcy</u>").[10]  GWLI first sought a TRO against Veritex, just as it did in the instant case, but resorted to bankruptcy immediately upon the state court's denial of the request.[11]

12.     On July 24, 2023, Judge Gargotta entered an *Agreed Order Dismissing Chapter 11 Bankruptcy Case with Prejudice* [No. 23-50027, Doc #81] (the "Order Dismissing with Prejudice")—agreed to by GWLI—dismissing the First Bankruptcy with prejudice and barring GWLI from commencing any bankruptcy proceedings for 36 months thereafter.  A certified copy of the Order Dismissing with Prejudice is attached hereto as **Exhibit A**.

13.     Therefore, GWLI could not file its own voluntary petition to stop Veritex's foreclosure.  On information and belief, GWLI arranged for McCubbin to file the Involuntary Petition to (at best) circumvent Judge Gargotta's Order Dismissing with Prejudice, because bankruptcy was the only remaining means of forestalling GWLI's loss of the Property.  As Judge Hale noted in the *NRA* case, "a Chapter 11 petition is not filed in good faith unless it serves a valid bankruptcy purpose,"[12] and this case appears to have no purpose other than stopping Veritex's foreclosure.

---

[10] GWLI filed the First Bankruptcy case in San Antonio, despite the Property being located in Houston.

[11] *Galleria West Loop Investments, LLC v. Veritex Community Bank*, Cause No. 2023-00074 (Tex. Dist. – Harris Co. [125th Dist.] Jan. 3, 2023), *see Plaintiff's Original Petition and Emergency Application for Temporary Restraining Order and Damages* (Jan. 3, 2023) and *Order Denying Application for Temporary Restraining Order and Damages* (Jan. 3, 2023).

[12] *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262, 270-71 (Bankr. N.D. Tex. 2021) (citing *Off. Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 165 (3d Cir. 1999)); *see also Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986) ("Resort to the protection of the bankruptcy laws is not proper… [if] there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation….").

14.     This is a classic single asset real estate case.[13]  Veritex's secured debt totals over $20 million and is superseded by ad valorem tax liens of more than $3 million.  According to GWLI's own appraisal, as of April 2023, the Property is worth no more than $11 million.[14]

15.     GWLI is incapable of reorganizing in Chapter 11.  The Property is so deteriorated that the East Building is vacant and abandoned, aside from the occasional vagabonds (who do not pay rent).  The West Building, while at least habitable, is only 32% occupied.[15]  Veritex understands that multiple tenants have vacated the building but continue to pay rent under their leases.  The Property generates approximately $60,000 per month in rent, which is insufficient to even cover operating expenses, much less GWLI's debt service.  On information and belief, GWLI cannot increase rent revenue without investing hundreds of thousands of dollars to address years of overdue repairs and deferred maintenance,[16] which it does not have, and GWLI cannot raise any new funding because there is no equity in the Property.  By all accounts, the Property is worth more as vacant land than in its current form.

16.     Veritex has not received a full monthly debt service payment since 2019.

---

[13] *See, e.g., Little Creek Dev. Co.*, 779 F.2d 1068.

[14] This Appraisal was Exhibit 5 to GWLI's Witness and Exhibit List for the hearing on June 20, 2023, in the First Bankruptcy [No. 23-50027, Doc #70].  Veritex reserves all rights with respect to valuations of the Property, including the right to challenge this Appraisal or any other alleged appraisals or valuations on any grounds.

[15] This is according to GWLI's Rent Roll dated June 5, 2023, showing approximately 31,397 of the 98,063 total square footage in the West Building is leased, with tenants' rent obligations totaling $60,409.32 per month.  This is the most recent rent roll provided to Veritex.  On information and belief, the occupancy rate has not increased, because GWLI's income statement shows rent revenue of between $59,733 and $59,918 per month during the first quarter of 2024.

[16] According to the Property Condition Assessment obtained by Veritex, as of April 2023, the estimated cost to address the Property's "immediate needs" is approximately $650,000, as further described herein, in addition to long-term maintenance and repairs estimated to exceed $1 million over the next five years.

10765351 v1 (70859.00050.000)

## BACKGROUND

**A.     Veritex's First-Lien Deed of Trust**

17.     In March 2018, Veritex's predecessor, Green Bank, N.A. ("Green Bank") loaned BDFI, LLC ("BDFI") of $18,068,906.42 secured by a first mortgage lien on the Property (the "BDFI Loan" or "Loan").  The BDFI Loan and Veritex's liens are evidenced by, among other documents, the *Promissory Note* attached hereto as **Exhibit B** (the "Note") and the *Deed of Trust and Security Agreement* attached hereto as **Exhibit C** (the "Deed of Trust," and together with the Note and all other documents evidencing, securing, governing, or otherwise related to the Loan, the "Loan Documents").[17]

18.     Ten months later, on January 1, 2019, Green Bank merged with and into Veritex, and Veritex became the holder of the Loan and all Loan Documents.  The Certificate of Merger is attached hereto as **Exhibit D**.

19.     Veritex's liens and secured debts are not in dispute.  The Order Dismissing with Prejudice signed by Judge Gargotta is final and non-appealable.  GWLI signed and agreed to the Order Dismissing with Prejudice, which contains specific findings as to the validity and priority of Veritex's lien and security interests:

> C.     Veritex is the successor to Green Bank, N.A. by merger and is the current holder in due course of the Loan Documents (as defined in the Motion), pursuant to which Veritex holds a first-priority, properly perfected and valid lien and security interest against all of the Debtor's assets, including the Debtor's real property located at 50 Briar Hollow Lane, Houston, Texas 77027, subject to existing ad valorem tax liens on the Property.

**Ex. A** at 2.

---

[17] The Loan Documents are attached to Veritex's Proof of Claim #2 filed in GWLI's prior bankruptcy case.  *In re: Galleria West Loop Investments, LLC*, No. 23-50027-cag11, Claim #2 (Bankr. W.D. Tex. Jan. 3, 2023).

10765351 v1 (70859.00050.000)

**B.      Debtor's Acquisition of the Property from BDFI**

20.      BDFI owned the Property from 2018 through October 2022.  Shortly after the Loan from Green Bank, in late 2018, BDFI allegedly borrowed another $8 million from GWLI secured by a second-lien Deed of Trust on the Property.  The Debor foreclosed on its second-lien Deed of Trust in October 2022, thereby obtaining title to the Property subject to Veritex's first-lien Deed of Trust.[18]

21.      Accordingly, the debt on the Property is in the name of BDFI, and GWLI owns record title to the Property subject to Veritex's Deed of Trust lien.

22.      Significantly, both BDFI and GWLI are **owned and controlled by Ali Choudhri** ("Choudhri").

**C.      Choudhri's History of Payment Defaults**

23.      At the time Veritex succeeded Green Bank, in January 2019, the Loan was set to mature on March 30, 2019.[19]  In April 2019, after BDFI defaulted, Veritex agreed to extend the maturity date through December 30, 2019.  Veritex and BDFI thereafter entered into certain forbearance agreements, with the final forbearance period ending on September 15, 2022.

24.      The Loan is now more than five years past its original maturity date, and Veritex has not received a full monthly principal and interest payment since 2019.  Veritex has only received sporadic interest-only payments and payments in consideration of the aforementioned forbearance agreements.  The forbearance payments totaled approximately $775,000.

---

[18] *See* Substitute Trustee's Deed dated October 21, 2022, conveying the Property from BDFI to GWLI, as recorded in the Harris County Real Property Records [RP-2022-519250].

[19] The Loan originally matured on December 30, 2018, but two weeks before the merger with Veritex, Green Bank agreed to extend the maturity date to March 30, 2019.

10765351 v1 (70859.00050.000)

**D.** **GWLI's First Bankruptcy**

25.     In December 2022, Veritex posted the Property for foreclosure.  The foreclosure sale was scheduled for January 3, 2023, at 1:00 p.m.  On the morning of the sale, GWLI filed a petition for a temporary restraining order ("TRO") to stop the foreclosure.[20]  Immediately after the state court denied the request, GWLI filed Chapter 11 bankruptcy in the Western District of Texas, San Antonio Division; Case No. 23-50027 before Chief Bankruptcy Judge Craig A. Gargotta.

26.     Veritex filed a Motion to Dismiss GWLI's prior bankruptcy case as having been filed in bad faith [Case No. 23-50027, Dkt. #10] (the "Motion to Dismiss").  Veritex later filed a Motion for Relief from the Automatic Stay as to the Property [Case No. 23-50027, Dkt. #55] (the "Motion to Lift Stay") for cause, including bad faith, lack of adequate protection, and the deteriorating condition of the Property, and because GWLI lacked any equity in the Property—all of which are continuing circumstances warranting relief from the automatic stay as requested in this instant Motion.

27.     Choudhri insisted prior to GWLI's First Bankruptcy, during the First Bankruptcy, and after the Order Dismissing with Prejudice that he would be able to sell or refinance the Property – all to no avail.

28.     Veritex's Motion to Lift Stay and Motion to Dismiss were set for hearing on June 20, 2023.  Prior to the hearing, Veritex and Choudhri reached an agreement to resolve the Motions, the terms of which are set forth in a confidential Settlement Agreement (the "Agreement") by and between Veritex, GWLI, BDFI, and Choudhri.  GWLI, BDFI, and Choudhri are hereinafter referenced collectively as the "Choudhri Parties."  The Agreement became effective upon Judge Gargotta's entry of the Order Dismissing with Prejudice on July 24, 2023.

---

[20] *See* note 11, *supra*.

10765351 v1 (70859.00050.000)

29.     Due to the Agreement's confidentiality provisions Veritex has not attached the Agreement as an exhibit, but as will be explained to the Court at the hearing on this Motion, the Agreement has been breached by the Choudhri Parties.

**E.     Choudhri's History of Using Bankruptcy to Stop Foreclosures**

30.     That Choudhri would cause GWLI to circumvent Judge Gargotta's Order Dismissing with Prejudice and disregard his express covenants under the Agreement should come as no surprise.  In addition to his incredibly litigious business history, Choudhri also has a history of resorting to bankruptcy to stop foreclosure on his entities' properties.  The following is a list of bankruptcy cases, which may not be exhaustive, filed by an entity owned and/or controlled by Choudhri on the eve of a scheduled foreclosure sale:[21]

> (a)     *In re: 2500 West Loop, Inc.*, No. 18-20459 (Bankr. S.D. Tex. (Corpus Christi) Oct. 12, 2018) – case filed after unfavorable rulings in state court lawsuits with Mokaram-Latif West Loop, Ltd. and Osama Abdullatif.  *See* No. 18-20459, Dkt. #18 (Motion for Relief from Stay); Dkt. #28 (Motion to Dismiss for lack of good faith);

> (b)     *In re: Houston Real Estate Properties LLC*, No. 22-32998 (Bankr. S.D. Tex. (Houston) Oct. 7, 2022) – case filed prior to (the morning of) a state court hearing on entry of final judgment against HREP in a case, again, involving litigation with Osama Abdullatif.

> (c)     *In re: Galleria West Loop Investments, LLC*, No. 23-50027-cag11 (Bankr. W.D. Tex. (San Antonio) Jan. 3, 2023) – filed to stop Veritex's foreclosure after GWLI was denied a TRO in state court, as further described herein above.

> (d)     *In re: Galleria 2425 Owner, LLC*, No. 23-60036-cml11 (Bankr. S.D. Tex. (Victoria) Jul. 5, 2023) – case filed after state court denied TRO to stop foreclosure.  *See* No. 23-60036, Dkt. #33 (Motion to Dismiss); Dkt. #105 (Order Dismissing Case, Nov. 1, 2023).

---

[21] Except for GWLI's bankruptcy case, Case No. 23-50027, which is further described herein above, the summaries of circumstances preceding these bankruptcy filings is based solely on information contained in the pleadings and documents filed of record in the respective proceedings.  Other than GWLI's bankruptcy case, Veritex does not have, nor does it purport to have, actual knowledge of the circumstances predicating these filings or the allegations made in such pleadings and/or documents.

10765351 v1 (70859.00050.000)

(e)     *In re: SAL ATX LLC*, No. 23-10736-smr11 (Bankr. W.D. Tex. (Austin) Sep. 5, 2023) – debtor's property was set for foreclosure on September 5, 2023, and debtor filed bankruptcy after state court denied request for TRO.  *See* 23-10736, Dkt. #21 (Motion to Annul Automatic Stay).

(f)     *In re: Maya J ATX LLC*, No. 23-10737-smr11 (Bankr. W.D. Tex. (Austin) Sep. 5, 2023) – same as above; debtor filed bankruptcy to stop foreclosure after state court denied request for TRO.  *See* 23-10737, Dkt. #21 (Motion to Annul Automatic Stay).

(g)     *In re: Galleria 2425 Owner, LLC*, No. 23-34815-jpn11 (Bankr. S.D. Tex. (Houston) Dec. 5, 2023) – debtor's ***second*** bankruptcy filing in 5 months to stop foreclosure on December 5, 2023, again after denial of state court TRO requests.  *See* No. 23-34815, Dkt. #72 (Motion to Convert Case); Dkt. #99 (Order Appointing Chapter 11 Trustee).

(h)     *In re: Texas REIT, LLC*, No. 24-10120-smr11 (Bankr. W.D. Tex. (Austin) Feb. 6, 2024) – case filed to stop foreclosure after denial of request for TRO. *See* No. 24-10120, Dkt. #9 (Motion to Annul Automatic Stay).

31.     The foregoing list only includes cases that Veritex is aware of, which may not be exhaustive of all Choudhri-related bankruptcy filings in recent years.  Based on allegations in the respective pleadings, each of these bankruptcy cases was filed on the eve of a pending foreclosure by the debtor's secured lender.  Thus, the instant case marks at least the ***SIXTH* time in less than a year** that Choudhri has leveraged the bankruptcy process to stop a property foreclosure.

**F.     At Least $3.2 Million of Ad Valorem Tax Liens Encumber the Property**

32.     Since Veritex succeeded to Green Bank in 2019, the value of Veritex's first-lien interest has continuously diminished as a result of GWLI and/or the related BDFI's failure to pay ad valorem property taxes assessed against the Property ("Property Taxes").  Statutory ad valorem tax liens for unpaid Property Taxes ("Tax Liens") take priority over Veritex's Deed of Trust under Texas law.  TEX. TAX CODE §§ 32.01(d), 32.05(b).

33.     In February 2022, having failed to pay any Property Taxes for the prior three years, BDFI obtained tax loans to pay Property Taxes of more than $1.5 million assessed for the 2019-2021 tax years (collectively, the "Caz Creek Tax Loan").  The loans were made by Caz Creek

Holdings 2, LLC, as Custodian for CCH TX 2, LLC (together with its successors or assigns, if any, "Caz Creek").[22]

34.     Additionally, as of July 2023, Property Taxes were past due and owing to Harris County, et al. (collectively, the "Taxing Authorities") for the 2022 tax year.  On August 25, 2023, GWLI obtained a loan from FGMS Holdings, LLC (together with its successors or assigns, if any, "FGMS") in the amount of $717,308.84 to pay the 2022 Property Taxes (the "FGMS Tax Loan").

35.     The FGMS Tax Loan and the Caz Creek Tax Loan (collectively, the "Tax Loans") are fully secured by Tax Liens assigned to the respective lenders from the Taxing Authorities.

36.     On April 8, 2024, FGMS filed a lawsuit against GWLI for failure to pay as required under the FGMS Tax Loan and to commence judicial foreclosure on the Property (the "Tax Lawsuit").[23]

37.     The Taxing Authorities have intervened in FGMS's Tax Lawsuit based on GWLI's failure to pay 2023 Property Taxes.[24]

38.     Tax Liens currently encumber the Property in the following amounts:

| | |
|---|---|
| Taxing Authorities (2023)[25] | $508,978.90 |
| FGMS Tax Loan (2022)[26] | $840,112.61 |
| Caz Creek Tax Loan (2019-21)[27] | $1,854,929.56 |
| **Total Tax Liens:** | **$3,204,021.07** |

---

[22] *See* Caz Creek's Proof of Claim filed in GWLI's First Bankruptcy [No. 23-50027, Claim #3].

[23] *Mack Brooks, LLC as Agent and Attorney in Fact for FGMS Holdings LLC v. Galleria West Loop Investments GP, LLC, et al.*, Cause No. 2024-22142 in the 269th Judicial District Court of Harris County, Texas.

[24] *See Original Intervention* filed by Harris County, Harris County Flood Control District, Port of Houston Authority, Harris County Hospital District, and Harris County Department of Education (Apr. 19, 2024) attached hereto as **Exhibit E**; *see also Original Intervention* filed by the City of Houston, Houston ISD, and Houston Community College System's Original Intervention (May 3, 2024) attached hereto as **Exhibit F**.

[25] *See* **Exs. E-F**.

[26] As of May 23, 2024, per the FGMS payoff statement sent to Veritex.

[27] As of May 7, 2024, per the Caz Creek payoff statement sent to Veritex.

39.     Accordingly, Veritex believes the total value of Tax Liens on the Property is at least $3.2 million as of the Petition Date.

**G.     Condition of the Property**

40.     Veritex's Motion to Dismiss GWLI's First Bankruptcy further details the problematic condition of the Property.  Choudhri has for years neglected to address critical repairs and deferred maintenance needed on the Property.  The situation is so bad, in fact, that one of the two buildings on the Property—the East Building—is vacant and abandoned, and it has been that way since 2021.[28]  The most recent rent roll obtained by Veritex shows that the West Building is only 32% occupied and is generating rents of approximately $60,000 per month.[29]

41.     Veritex retained a professional consultant in April 2023 to inspect the condition of the Property and prepare a Property Condition Assessment Report, which is dated April 12, 2023 (the "PCA").  The PCA report describes an estimated $650,000 of "immediate physical needs" on the Property, as of April 2023, including:

- Replacing main electrical conduits at an estimated cost of $60,000;
- Repairing out-of-service elevators at an estimated cost of $102,757;
- Installing a fire sprinkler system in the East Building at an estimated cost of $325,000; and
- Twenty-three other different items with a total estimated cost of $160,310.

42.     The PCA report also describes long-term needs on the Property of more than $1 million over the next five years, including a roof replacement estimated to cost $495,000.

**BASIS FOR RELIEF**

43.     The Court should grant Veritex relief from the automatic stay pursuant to section 362(d)(4) of the Bankruptcy Code, because the Involuntary Petition was filed as part of a scheme

---

[28] According to Veritex's last Appraisal of the Property in May 2023.

[29] *See* note 15, *supra*.

to delay, hinder, and/or defraud Veritex, and this is the second bankruptcy case filed to stop Veritex from foreclosing the Property.  11 U.S.C. § 362(d)(4)(B).

44.     Alternatively, the Court should lift the automatic stay for "cause," pursuant to section 362(d)(1), based on GWLI's and McCubbin's lack of good faith in filing this case, the lack of adequate protection for Veritex's lien interests, and the continuing deterioration of the Property. 11 U.S.C. § 362(d)(1).

45.     Alternatively, the Court should lift the automatic stay pursuant to section 362(d)(2), because GWLI lacks equity in the Property and the Property is not necessary to an effective reorganization.  11 U.S.C. § 362(d)(2).

**A.     This Case is Part of Scheme Involving Multiple Bankruptcy Filings to Preclude Veritex from Foreclosing the Property – 11 U.S.C. § 362(d)(4)**

46.     Section 362(d)(4) of the Bankruptcy Code mandates relief from the automatic stay under the circumstances of this case.  Section 362(d)(4) states in relevant part as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay…--
>
> > (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a **scheme to delay, hinder, or defraud** creditors that involved either—
> >
> > > (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> > >
> > > **(B) multiple bankruptcy filings affecting such real property.**

11 U.S.C. § 362(d)(4) (emphasis added).

47.     The Bankruptcy Code does not define "scheme," however, in the context of section 362(d)(4), this Court has interpreted the term to mean "a plan or program of action." *In re Young*,

No. 06-80534, 2007 WL 128280, at *9 (Bankr. S.D. Tex. Jan. 10, 2007) (citing MERRIAM–WEBSTER DICTIONARY 637 (Sidney Landau ed., Trident Press 1998)).

48.     This Court held in *Young* that where the parties filed multiple bankruptcies on the eve of foreclosure, "**[t]here is no question that part of the scheme was to delay the foreclosure sales**." *Id.*  Indeed, in lifting the automatic stay, the Court found that the parties' eve-of-foreclosure bankruptcy filings constituted not only a scheme to "delay," but also to "hinder" and "defraud" creditors, thus satisfying each of the disjunctive criteria under section 362(d)(4).[30]  *Id.* at *9-*10; *see also In re JCP Properties, Ltd.*, 540 B.R. 596, 620 (Bankr. S.D. Tex. 2015) ("On the eve of foreclosure, Debtor filed another chapter 11 case, JCP II, and triggered the automatic stay, which delayed and hindered RREF's ability to pursue its rights to foreclose…. Debtor's conduct… shows the very essence of a scheme to hinder and delay, bearing the argument of 'good intentions to hinder and delay.'").

49.     Accordingly, cause exists to terminate the automatic stay under section 362(d)(4). This is the second bankruptcy case filed in the last 16 months to stop Veritex from foreclosing on the Property.  Moreover, in addition to the broader general scheme of using bankruptcy to stop Veritex's foreclosure, the scheme in this case also includes collusion with McCubbin to circumvent Judge Gargotta's Order Dismissing with Prejudice.  In *Young*, the parties acted in an organized an effort, and thus the Court attributed the conduct of each party in determining movant satisfied his burden under section 362(d)(4).  *Id.* at *9.  The same logic should apply in this case – particularly given that the same attorney (Madden) prosecuted GWLI's TRO Action and filed McCubbin's

---

[30] At the time of the *Young* opinion section 362(d)(4) was drafted as a conjunctive test requiring movant's to show a scheme to delay, hinder, *and* defraud.  "The current language of 'or' in paragraph (4) reflects a 2010 amendment to § 362(d)(4), which changed 'hinder, and' to 'hinder, or[,]' … [representing] a significant alteration in the construction of paragraph (4) from a conjunctive to a disjunctive test." *In re JCP Properties, Ltd.*, 540 B.R. 596, 619 (Bankr. S.D. Tex. 2015) (citations and quotations omitted).

10765351 v1 (70859.00050.000)

Involuntary Petition *on the same day*, and Madden continues to represent GWLI in the TRO Action[31] – such that any action taken by either party, or by Madden, should attribute to the Court's determination.

50.     The circumstances of this case establish clear *prima facie* cause for relief under section 362(d)(4), such that the burden is on GWLI and/or McCubbin to show that this case was *not* filed as part of a scheme to hinder, delay, or defraud.  11 U.S.C. § 362(g); *In re Omni Lion's Run, L.P.*, 578 B.R. 394, 398 (Bankr. W.D. Tex. 2017) ("Beyond the *prima facie case*, which is required in all stay litigation, the movant only bears the burden of proof with respect to the debtor's equity in the property; the party opposed to the relief has the burden on all other issues."); *see also In re McMahan*, 481 B.R. 901, 919 (Bankr. S.D. Tex. 2012) (debtor bears the burden of showing "unforeseen change in circumstances" to justify successive bankruptcy filings).

51.     GWLI cannot carry its burden.  Indeed, the facts of this case entitle Veritex to prospective *in rem* relief from the automatic stay precluding the stay from coming into effect upon any subsequent bankruptcy filings by or against GWLI.  *See, e.g., Vardan v. Wells Fargo Bank, N.A.*, 606 B.R. 681, 685 (E.D. Va. 2019) (affirming bankruptcy court's order granting Wells Fargo prospective in rem relief from the automatic stay where debtor and her husband had filed multiple bankruptcy cases to stop Wells Fargo from foreclosing on their house, and stating "the Debtor's and her family's actions 'represent the very behavior that § 362(d)(4) was enacted to prevent.'") (citations omitted).

**B.     Cause for Termination of the Stay – 11 U.S.C. § 362(d)(1)**

52.     The Court may terminate the automatic stay "for cause, including the lack of adequate protection" pursuant to section 362(d)(1) of the Bankruptcy Code.  11 U.S.C. § 362(d)(1).

---

[31] *See* **Exs. G-H**.

10765351 v1 (70859.00050.000)

In this case, in addition to Veritex's lack of adequate protection, "cause" also exists to lift the automatic stay based on GWLI's and McCubbin's lack of good faith in filing this case, as well as the continuing deterioration of the Property.

**(i)** *Lack of Good Faith*

53.     Lack of good faith in filing a bankruptcy petition is cause for relief from the automatic stay under section 362(d)(1).  *In re WGMJR, Inc.*, 435 B.R. 423, 433 (Bankr. S.D. Tex. 2010) ("The absence of good faith constitutes cause for lifting of the automatic stay.") (citing *Little Creek Dev. Co.*, 779 F.2d 1068); *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989); *Aniel v. HSBC Bank USA, Nat'l Ass'n*, 633 B.R. 368, 383 (N.D. Cal. 2021) (citing *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986)); *In re Hyde*, 227 B.R. 170, 171 (Bankr. W.D. Ark. 1998); *In re Long Bay Dunes Homeowners Ass'n, Inc.*, 246 B.R. 801, 806 (Bankr. D.S.C. 1999).

54.     Courts in the Fifth Circuit assess whether a bankruptcy case was filed in good faith based on the factors enumerated in the case of *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1071-72 (5th Cir. 1986).  The Fifth Circuit in *Little Creek* identified certain circumstances that are commonly present in bad faith bankruptcy filings, which one bankruptcy court summarized as follows:

> (1) the debtor has one asset, which is a tract of real property;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;
>
> (3) the debtor has few employees;
>
> (4) the property is the subject of a foreclosure action as a result of arrearages on the debt;
>
> (5) the debtor's financial problems involve essentially a dispute between the debtor and a secured creditor which can be resolved in a pending state court action; and

(6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*In re McMahan*, 481 B.R. 901, 916 (Bankr. S.D. Tex. 2012) (citing *Little Creek*, 779 F.2d 1068).

It should be noted that, while arguably subsumed within the foregoing factors, the *Little Creek* Court also identified the following as pertinent indicia of bad faith:

(i) "little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments;" and

(ii) "[b]ankruptcy offers the only possibility of forestalling loss of the [debtor's] property."

*Little Creek*, 779 F.2d at 1072-73.

55.     The overarching inquiry in assessing good faith is **whether the bankruptcy serves any valid purpose or presents any potential benefit to the creditors**.  *Id*; *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262, 270-71 (Bankr. N.D. Tex. 2021).  The *Little Creek* factors are meant to aid in determining whether the bankruptcy filing serves any valid purpose.  *Id.*  Importantly, all factors need not be present, and the Court may place more weight on one factor than another.  *Id.*; *McMahan*, 481 B.R. at 916) (citations omitted); *Elmwood Dev. Co. v. Gen. Elec. Pension Trust (Matter of Elmwood Dev. Co.)*, 964 F.2d 508, 510 (5th Cir. 1992).

56.     While the Involuntary Petition was not, technically, filed by GWLI, the *Little Creek* factors are nonetheless applicable in determining whether this bankruptcy case serves any valid purpose.  The answer is a resounding "no;" under the *Little Creek* test, this case serves no valid bankruptcy purpose whatsoever.

**Analysis of *Little Creek* Factors:**

Factor 1 (✓): The Property is GWLI's only asset.

Factor 2 (✓): McCubbin is the only petitioning creditor, who claims to be owed a mere $32,665 from GWLI.   Secured claims against the Property exceed $23,000,000.  Schedule E/F from GWLI's prior bankruptcy case [No. 23-50027, Dkt. #6] is completely blank—not a single unsecured creditor is listed—and not

one unsecured creditor filed a proof of claim.  Veritex, Harris County, and Caz Creek were the only creditors that filed proofs of claim during the entire case.

Factor 3 (✔): GWLI has no employees besides its principals.  GWLI's cash collateral budget from the First Bankruptcy [No. 23-50027, Dkt. #78] shows that GWLI has $0.00 payroll expense.

Factor 4 (✔): This case was filed late in the evening on May 6, 2024, roughly 12 hours before Veritex's scheduled foreclosure sale at 10:00 a.m. on May 7, 2024. GWLI's last bankruptcy case was filed on January 3, 2023, less than an hour before Veritex's scheduled foreclosure sale.

Factor 5 (✔): Given the timing of the Involuntary Petition on the heels of the State Court's refusal to enjoin Veritex's foreclosure, not to mention the fact that it was filed by GWLI's State Court attorney on behalf of a petitioning creditor, the only possible conclusion is that this case was filed solely to stop Veritex's foreclosure.

Moreover, Veritex is essentially the only creditor affected by this case, at least in any material respect.  Whether GWLI is in bankruptcy or not, unsecured creditors will recover nothing, because there is no equity in the Property, and Tax Lien holders will recover 100% of their claims.

Factor 6 (✔): See Factor 4 above.

57.     Literally **all** *Little Creek* factors are present in this case, which is quite remarkable considering the Fifth Circuit appears to have not contemplated that possibility when developing the factors.  The Court predicated its list of bad faith indicia by noting that "[s]everal, ***but not all***, of the following conditions usually exist." *Little Creek*, 779 F.2d at 1072-73 (emphasis added). Moreover, in addition to the *Little Creek* factors, this case is ever further tainted by the lengths to which GWLI and McCubbin went, through and presumably with the assistance of Madden, to circumvent Judge Gargotta's order dismissing GWLI's First Bankruptcy with prejudice.

58.     The requirement that bankruptcy petitions be filed in good faith is no less applicable in the context of involuntary proceedings.  *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 334 (3d Cir. 2015) ("We will not depart from this general 'good faith' filing requirement in the context of involuntary petitions for bankruptcy.").  As the Fifth Circuit notes in *Little Creek*:

Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings. …

Requirement of good faith prevents abuse of the bankruptcy process… Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons… available only to those debtors and creditors with "clean hands."

*Little Creek*, 779 F.2d at 1071-72; *see also Forever Green Athletic*, 804 F.3d at 334 (citing *Little Creek* at 1072); *In re Rule, Ltd.*, 41 B.R. 153, 156 (Bankr. D. Haw. 1984) (lifting the automatic stay to allow foreclosure to proceed upon finding that the debtor's president orchestrated the filing of an involuntary petition against the debtor to stop a foreclosure scheduled for the following day; stating that "the Court finds that the petition in bankruptcy was not filed in good faith and that it was filed merely to delay the foreclosure sale").

59.     The egregious circumstances of this case – namely, that (i) this is the second bankruptcy case filed to stop Veritex from foreclosing the Property; (ii) GWLI's attorney filed the Petition for McCubbin hours after representing GWLI in State Court litigation seeking to stop the foreclosure; and (iii) all six *Little Creek* factors are present – establish Veritex's prima facie case for relief from the automatic stay such that GWLI and/or McCubbin bear the burden to show that this case was filed in good faith for a legitimate bankruptcy purpose.  11 U.S.C. § 362(g); *Omni Lion's Run*, 578 B.R. at 398 (Bankr. W.D. Tex. 2017); *McMahan*, 481 B.R. at 919.

**(ii)     *Veritex is Not Adequately Protected***

60.     Adequate protection is required to "safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization."  *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *see also United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988).  "Adequate protection ensures that a creditor receives the value for which it bargained prebankruptcy."  *In re Vita Craft Corp.*, 625 B.R.

10765351 v1 (70859.00050.000)

491, 503 (Bankr. D. Kan. 2020) (citing *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987)).[32]  To establish a prima facie case for lifting the stay based on a lack of adequate protection, creditors must offer "proof of either (1) a decline in the value of the Collateral or (2) the threat of such a decline."  *Vita Craft Corp.*, 625 B.R. at 503.

61.     The right for which Veritex bargained outside of bankruptcy is the right to foreclose on the Property and apply the proceeds to payment of the Loan.  But for the filing of this case and resulting imposition of the automatic stay, Veritex would have foreclosed on the Property on May 7, 2024, the day after the Petition Date.  Thus, for adequate protection purposes, Veritex is entitled to preservation of the foreclosure value of the Property as of the Petition Date.  *Vita Craft Corp.*, 625 B.R. at 503-04 (citing 4 *Collier on Bankruptcy* ¶ 506.03[7][a] (Richard Levin & Henry J. Sommer, eds., 16th ed.)).[33]

62.     Unpaid Property Taxes have continued to accrue on the Property for years, giving rise to Tax Liens that take priority over Veritex's first-lien Deed of Trust.  TEX. TAX CODE §§ 32.01(d), 32.05(b).  The continuing accrual of Property Taxes is "cause" for relief from the stay under Bankruptcy Code section 362(d)(1).  *See, e.g., In re Ainsworth*, No. 17-20418, 2018 WL 5304719, at *10 (Bankr. S.D. Tex. Oct. 23, 2018) ("[A] depreciation in value of NewFirst's interest arises because its interest is subject to the continuing, senior liens for ad valorem taxes.… Consequently, in order to adequately protect NewFirst's interest in the 51.80 acres, Ainsworth must make adequate protection in payments in an amount equal to that depreciation."); *In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 871 (Bankr. D. Colo. 2001) ("[T]he erosion of the

---

[32] Adequate protection may be provided in the form of (1) cash payments, (2) additional or replacement liens on property of the estate, or (3) "such other relief… as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."  11 U.S.C. § 361.

[33] *Cf. id.* at 506 ("For purposes of plan confirmation, the 'value' of [creditor's] interest in the Collateral is not foreclosure value, but replacement value.") (citing *Assocs. Commercial Corp. v. Rash*, 520 U S. 953, 962-63 (1997)).

creditor's position or of a threatened erosion… may be shown through evidence of declining property values,… the non-payment of taxes or other senior liens, failure to insure the property, failure to maintain the property, or other factors that may jeopardize the creditor's present position."); *Vita Craft Corp.*, 625 B.R. at 503 (same); *see also In re Pena* (Bankr. D.P.R. Mar. 15, 2016) ("there is a continuous diminution of the estate because payments are not being made on the secured claim and there is no evidence that payments are being made on the property taxes."); *In re Infinite Swans, LLC*, No. BR 11-22880 RKM, 2011 WL 2293303, at *2 (Bankr. D. Utah June 9, 2011) ("the Property is subject to additional risk of diminution on account of, among other things, the 2011 real property taxes that are accruing"); *see also In re Nw. Timberline Enterprises, Inc.*, 348 B.R. 412, 417 (Bankr. N.D. Tex. 2006) ("The court finds it extremely significant that these Debtors are five years behind on paying their ad valorem and real estate taxes…").  It should also be noted that GWLI's failure to pay Property Taxes after the Petition Date is a specifically enumerated cause for dismissal or conversion of this case under section 1112(b) of the Bankruptcy Code.  *See* 11 U.S.C. § 1112(b)(4)(I); *In re Premier Golf Properties, LP*, 564 B.R. 710, 726 (Bankr. S.D. Cal. 2016).

63.    GWLI is incapable of adequately protecting Veritex's interests in the Property; it proved as much during the First Bankruptcy. Accordingly, the automatic stay should be lifted pursuant to section 362(d)(1).

64.    This Motion constitutes a demand by Veritex for adequate protection of its interests in the Property and GWLI's other assets under section 363(e) of the Bankruptcy Code.

**(iii)    *Continuing Deterioration of the Property***

65.    The Choudhri Parties' continuous deferral of maintenance and failure to make necessary repairs to the Property constitute additional cause for lifting the stay under section 362(d)(1).  *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 n. 9 (Bankr. S.D.N.Y. 1994) (stating that

threats to a creditor's position "include the failure to maintain property insurance or the failure to keep the property in a good state of repair."); *In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 871 (Bankr. D. Colo. 2001) ("[T]he erosion of the creditor's position or of a threatened erosion… may be shown through evidence of … failure to insure the property, **failure to maintain the property**, or other factors that may jeopardize the creditor's present position.") (emphasis added); *Vita Craft Corp.*, 625 B.R. at 503 (same).

66.     As described above and in Veritex's Motion to Dismiss, the Property requires extensive repairs and capital improvements in order to increase occupancy, including at least $650,000 of *immediate* short-term deferred maintenance and "life safety" repairs.  GWLI cannot cover its debt service and basic expenses of operating the Property, much less afford to make necessary repairs and improvements.

67.     Courts routinely grant relief from the automatic stay on facts akin to this Case.  In the single asset real estate case of *In re WGMJR, Inc.*, for example, the court found cause to lift the stay based upon the facts that (i) the case was a two-party dispute with the debtor's secured lender, (ii) the debtor filed bankruptcy in bad faith for the purpose of gaining an unfair advantage over the lender, (iii) the debtor had no funds to renovate the property as necessary to secure additional tenants, and it had no demonstrable prospects of soon obtaining such funds, and (iv) without increasing its lease revenue, the debtor was unable to make adequate protection payments to the lender.  *In re WGMJR, Inc.*, 435 B.R. 423, 433-34 (Bankr. S.D. Tex. 2010); *see also In re Mantachie Apartment Homes, LLC*, 488 B.R. 325 (Bankr. N.D. Miss. 2013) (finding lack of adequate protection for secured creditor's interest based on (i) debtor's inability to sell real property that secured the creditor's claim for an amount sufficient to satisfy the creditor's claim and (ii) lack of sufficient income to make payments adequate to protect creditor against further diminution of

10765351 v1 (70859.00050.000)

its security); *Vita Craft Corp.*, 625 B.R. at 504 (deferred maintenance and non-payment of property taxes established prima facie case of cause for lifting the stay).

## C.      GWLI Lacks Equity in the Property and the Property is Not Necessary to an Effective Reorganization – 11 U.S.C. § 362(d)(2)

68.      The Court may terminate the automatic stay with respect to an act against property if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization.  11 U.S.C. § 362(d)(2).  Veritex will show that GWLI does not have any equity in the Property.

69.      GWLI and/or McCubbin must show that the Property is necessary to an effective reorganization.  11 U.S.C. § 362(g).  GWLI must show that the Property is "essential for an effective reorganization *that is in prospect*." *In re Nw. Timberline Enterprises, Inc.*, 348 B.R. 412, 430 (Bankr. N.D. Tex. 2006) (emphasis in original) (quoting *Timbers of Inwood Forest Assocs.*, 484 U.S. at 376).  "This means ... there must be a reasonable possibility of a successful reorganization within a reasonable time." *Id*.

70.      GWLI cannot carry this burden.  Under circumstances akin to this Case, courts routinely determine that an effective reorganization is not feasible within any reasonable time. *See, e.g., Sutton v. Bank One, Texas, National Association (In re Sutton)*, 904 F.2d 327, 331 (5th Cir.1990) (determining that an effective reorganization was not feasible within a reasonable amount of time based on the facts that (i) only two tracts of land comprised debtor's entire bankruptcy estate, (ii) debtor had no net income, and (3) debtor was "in arrears on the tax payments on the two aforementioned properties."); *In re CGR, Ltd.*, 56 B.R. 305, 307 (Bankr. S.D. Tex. 1985) ("In order to reorganize effectively, the debtor would have to infuse substantial outside cash into the property cure the defects to lease as many units as possible in order to cover operating expenses and to cover debt service. The debtor failed to offer any evidence of such an infusion of

capital. There can be no effective reorganization in the reasonably foreseeable future."); *Nw. Timberline Enterprises, Inc.*, 348 B.R. at 431 (finding no "reasonable prospect of reorganization" and granting stay relief where (i) cases involved a two-party dispute; (ii) debtors were delinquent on multiple years of property taxes, a fact that the court found "extremely significant"; (iii) debtors had few creditors aside from taxing authorities; (iv) debtors' only substantive assets were the real property securing the lender's loans; (v) debtors failed to generate positive cash flow; and (vi) debtors' plan was not feasible with an appropriate interest rate of 13.75% and interest payments at 8% (the then-current prime rate) were insufficient to confirm the plan).

71. The simple fact is that GWLI cannot reorganize the Property. The Property is worth less than half of the debts it secures and needs hundreds of thousands of dollars of repairs, not to mention capital improvements, that GWLI cannot fund. Accordingly, the Court should lift the automatic stay pursuant to section 362(d)(2).

## REQUEST FOR ADEQUATE PROTECTION

72. Veritex hereby requests adequate protection of its interests in the Property and all other assets of GWLI, including, without limitation, Veritex's cash collateral, pursuant to section 363(e) of the Bankruptcy Code. Veritex requests that GWLI be prohibited using or disposing of any of Veritex's collateral unless Veritex's interests are adequately protected in accordance with the Bankruptcy Code. Veritex further requests allowance and payment of a superpriority claim under Bankruptcy Code section 507(b) to the extent of any failure of such adequate protection.

73. Veritex does not consent to GWLI's use of cash collateral.

## REQUEST FOR IMMEDIATE RELIEF

74. Veritex requests that both the Interim and Final Orders requested herein be effective immediately upon entry, notwithstanding Bankruptcy Rule 4001(a)(3) or any similar provisions of the Bankruptcy Code or Bankruptcy Rules that might otherwise apply to stay such orders.

10765351 v1 (70859.00050.000)

## <u>CONCLUSION</u>

75.     This case is not about GWLI's reorganization; it is not about maximizing value; it is not for the benefit of creditors; it is not about preserving jobs; it is not about any legitimate bankruptcy purpose whatsoever.  This case was filed solely to stop Veritex from foreclosing on the Property and serves no legitimate bankruptcy purpose.  Accordingly, the Court should grant Veritex relief from the automatic stay as requested herein.

## <u>PRAYER</u>

WHEREFORE, for the foregoing reasons, Veritex respectfully requests that the Court grant this Motion and:

(i)     enter an interim order on or before **<u>May 14, 2024, at 11:00 a.m.</u>**, granting Veritex relief from the automatic stay for the limited and sole purpose of posting the Property for foreclosure on the next available sale date, which is June 4, 2024; and

(j)     enter a final order on or before **<u>June 3, 2024</u>**, lifting the automatic stay as to the Property and authorizing Veritex to foreclose the Property on June 4, 2024, and exercise all other rights and remedies under the Loan Documents and applicable law; and

(k)     grant Veritex all such other and further relief as is just and proper.

10765351 v1 (70859.00050.000)

DATED:  May 9, 2024

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: ___*/s/ Kyle Woodard*___
      **Joseph M. Coleman**
      State Bar No. 04566100
      **Kyle Woodard**
      State Bar No. 24102661
      **JaKayla DaBera**
      State Bar No. 24129114
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Telecopier: (214) 777-4299
Email: jcoleman@krcl.com
Email: kwoodard@krcl.com
Email: jdabera@krcl.com

**COUNSEL FOR VERITEX COMMUNITY BANK**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 9, 2024, a true and correct copy of the foregoing Motion was filed with the Court and served (i) via the Court's electronic case filing system (ECF) upon all parties receiving such service in this bankruptcy case, and (ii) via email and/or first-class U.S. mail, postage prepaid, upon the following parties:

Galleria West Loop Investments, LLC
1001 W Loop South
Houston, TX 77027

Gene McCubbin d/b/a PopLabs
14315 Briarhills Pkwy
Houston, TX 77077

Kevin M Madden
Law Offices of Kevin Michael Madden PLLC
5225 Katy Freeway, Ste 520
Houston, TX 77007
Email: kmm@kmaddenlaw.com

Jana Smith Whitworth
Office of United States Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Email: jana.whitworth@usdoj.gov

      ___*/s/ Kyle Woodard*___
      Kyle Woodard

10765351 v1 (70859.00050.000)